IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREGORY HOLSTON, | : CIVIL ACTION NO. 1:22-CV-2002 |
| Plaintiff | : |
| v. | : (Judge Conner) |
| SAMUEL ANYANWU, | : |
| Defendant | : |

**MEMORANDUM**

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983. Plaintiff, Gregory Holston, alleges that defendant Samuel Anyanwu, a chaplain in Frackville State Correctional Institution ("SCI-Frackville"), violated his right to religious freedom by not allowing him to observe Ramadan in 2022. Anyanwu has moved for summary judgment for Holston's failure to exhaust administrative remedies. The motion will be granted.

**I.      Procedural History**

Holston filed this case on December 16, 2022, by filing a complaint against Anyanwu and two other defendants, Kathy Brittain, SCI-Frackville's superintendent, and Shawn Kephart, a facility manager in the prison. (Doc. 9). On July 17, 2023, the court granted defendants' motion to dismiss Holston's claims against Brittain and Kephart for failure to allege their personal involvement and the case proceeded solely with respect to Holston's claims against Anyanwu. (Docs. 14-15). Anyanwu answered the amended complaint on August 31, 2023. (Doc. 16). He then filed the instant motion for summary judgment on July 1, 2024, after the

close of fact discovery.  (Doc. 28).  Briefing on the motion is complete and it is ripe for review.  (Docs. 30, 33).

## II.    Material Facts[1]

### A.    Factual Background

Holston was housed in SCI-Frackville at all relevant times.  (Doc. 29 ¶ 1; Doc. 32 ¶ 1).  He converted to Islam on February 17, 2022.  (Doc. 29 ¶ 2; Doc. 32 ¶ 1).[2]  Holston submitted a request slip to Anyanwu in early March 2022 to participate in Ramadan.  (Doc. 29 ¶ 3; Doc. 32 ¶ 2.A.).  Anyanwu denied the request on March 5, 2022, stating, "Ramadan signup closed on 2/17/2022; and only inmates who have practiced for at least 6 months should be accommodated."  (Doc. 29 ¶ 5; Doc. 32 ¶ 1).

### B.    Exhaustion of Administrative Remedies

Exhaustion of administrative remedies in the DOC is governed by the three-step process outlined in the DOC's grievance policy, DC-ADM 804.  (See Doc. 29-3).[3]

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  M.D. PA. L.R. 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  Id.  Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts.  (See Docs. 29, 32).  To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

[2] Paragraph 1 of Holston's statement is a blanket admission to several assertions in Anyanwu's statement.

[3] Doc. 29-3 is a copy of DC-ADM 804 that has been produced for the court's review as an exhibit to Anyanwu's motion for summary judgment.

2

DC-ADM 804 encourages—but does not require—inmates to attempt to resolve any issues through informal requests to staff members prior to filing grievances. Id. § 1(A)(3). To initiate the policy's formal grievance process, an inmate must submit a written grievance within 15 working days from the date of the incident. Id. § 1(A)(8). If the inmate is unable to comply with the 15-working day deadline, he may request an extension of time to file a grievance. Id. § 1(C)(2). Once a grievance has been filed, the prison must respond to the grievance within 15 working days. Id. § 1(C)(5)(g). Next, the prisoner must submit a written appeal to the facility manager within 15 working days. Id. § 2(A)(1)(a). Upon receiving the grievance, the facility manager must respond to the appeal within 15 working days. Id. § 2(A)(2)(d)(1). Finally, the inmate must submit an appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within 15 working days. Id. § 2(B)(1)(b). SOIGA must respond to the final appeal within 30 working days. Id. § 2(B)(2)(a)(1).

After Anyanwu denied Holston's request to observe Ramadan on March 5, 2022, Holston first attempted to resolve the issue through an informal request to his unit manager on the same day. (Doc. 29 ¶ 6; Doc. 32 ¶ 1). After not receiving a response, he sent another informal request to Kephart on March 19, 2022. (Doc. 29 ¶ 7; Doc. 32 ¶ 7). He then submitted a third informal request to Brittain on April 3, 2022. (Doc. 29 ¶¶ 8-9; Doc. 32 ¶ 2.B).

Holston filed a formal grievance challenging Anyanwu's action on April 15, 2022. (Doc. 29 ¶ 11; Doc. 32 ¶ 1; Doc. 29-2 at 9-10). In the grievance, Holston stated that another inmate named Elmore had been allowed to observe Ramadan after converting to Islam on March 16, 2022. (Doc. 29 ¶¶ 12-14; Doc. 32 ¶ 1). The parties

have presented conflicting facts as to when Holston learned that Elmore had been approved to observe Ramadan: Anyanwu cites Holston's deposition testimony where he states that he learned about Elmore being approved "[m]aybe a week or a week and a half before Ramadan started," while Holston cites his informal request to Brittain where he states that he learned about Elmore's approval on the first day of Ramadan, April 2, 2022. (See Doc. 29 ¶ 16; 29-1 at 12; Doc. 32 ¶ 2.B; Doc. 33-6 at 5).

On April 20, 2022, SCI-Frackville's grievance coordinator rejected Holston's grievance as untimely, noting that it was not filed within fifteen working days of Anyanwu's action as required by DC-ADM 804. (Doc. 29-2 at 8). Holston appealed the rejection, but the facility manager and SOIGA upheld the grievance coordinator's action. (Doc. 29 ¶ 22; Doc. 32 ¶ 1). Holston testified during his deposition that he believed he had complied with DC-ADM 804 by sending informal requests to several staff members to attempt to resolve his issue. (Doc. 29 ¶¶ 23-24; Doc. 32 ¶ 1). In May 2022, Anyanwu allowed Holston to participate in Eid, a holy feast that marks the end of Ramadan. (Doc. 29 ¶ 25; Doc. 32 ¶ 1). Holston has been allowed to observe Ramadan in all subsequent years, and his records with the Pennsylvania Department of Corrections list him as a practicing Muslim. (Doc. 29 ¶¶ 26-27; Doc. 32 ¶ 1).

### III.   Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of

proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of his right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court is to view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. See Pappas, 331 F. Supp. 2d at 315.

### IV.   Discussion

Anyanwu seeks summary judgment based on Holston's failure to exhaust administrative remedies. (Doc. 30 at 6-9). Under the Prison Litigation Reform Act ("PLRA"), prisoners complaining about the conditions of their confinement must exhaust available administrative remedies before they may file suit in federal court. 42 U.S.C. § 1997e(a). The PLRA requires proper exhaustion, meaning plaintiffs must administratively grieve their claims in accordance with the procedural rules of the prison in which they are incarcerated. Downey v. Pa. Dep't of Corr., 968 F.3d 299, 305 (3d Cir. 2020) (citing Woodford v. Ngo, 548 U.S. 81, 88 (2006)). Failure to exhaust administrative remedies is an affirmative defense that defendants must plead and prove; it is not a pleading requirement for plaintiffs. Jones v. Bock, 549 U.S. 199, 216 (2007).

A prisoner is only required to exhaust administrative remedies that are "available." Rinaldi, 904 F.3d 257, 268 (3d Cir. 2018) (citing Woodford, 548 U.S. at 93). An administrative remedy is unavailable, and administrative exhaustion is thus excused, in three situations: "(1) when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when it is 'so opaque that it becomes, practically speaking, incapable of use,' such as when no ordinary prisoner can discern or navigate it; or (3) when 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" Id. at 266-67 (quoting Ross v. Blake, 578 U.S. 632, 643-44 (2016)). If a defendant establishes that the plaintiff failed to exhaust administrative remedies, the burden shifts to the plaintiff to show that the administrative process was unavailable to him. Id. at 268.

Anyanwu argues that Holston failed to exhaust administrative remedies because his grievance was rejected as untimely for failure to comply with DC-ADM 804's 15-working day timeline. (Doc. 30 at 6-9). Holston concedes that he did not file a grievance within 15 working days of Anyanwu denying his request to observe Ramadan, but he argues that the grievance process was rendered unavailable by prison staff members failing to respond to his requests for informal resolution before the 15-working day deadline. (Doc. 33 at 3).

Holston's argument is without merit. Although DC-ADM 804 encourages inmates to attempt informal resolution, it does not require such a step, and "nothing in DC-ADM 804 indicates that unofficial attempts to resolve a grievance toll or otherwise extend the time to file an official grievance." Williams v. Oppman,

6

No. 2:20-CV-663, 2023 WL 3645712, at *5 (W.D. Pa. May 25, 2023). If Holston believed that his deadline to file a grievance should have been extended based on staff members' failure to respond to his informal requests or based on when he learned that Elmore's request to observe Ramadan had been granted, he could have requested such an extension pursuant to Section 1(C)(2) of DC-ADM 804. His failure to seek an extension of time to file a grievance constitutes a failure to exhaust administrative remedies. Talley v. Clark, 111 F.4th 255, 263-64 (3d Cir. 2024). Hence, we will grant Anyanwu's motion for summary judgment because the record reflects that Holston failed to exhaust administrative remedies. We do not reach Anyanwu's alternative argument that Holston should be barred from recovering compensatory damages, punitive damages, or injunctive relief.

## V.     Conclusion

We will grant Anyanwu's motion for summary judgment and close this case. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    December 16, 2024